The next case for argument on our calendar to this morning is Miller v. Warden of Sing Sing, No. 18-2288. Good morning, and may it please the Court. My name is Randall Unger, and I represent the appellant, Mr. Miller. Procedurally, I don't believe that the defendant's ineffective assistance of counsel claim was ever decided on the merits by the State courts. In the direct appeal that he took from his conviction, the appellate division made no reference whatsoever to the ineffectiveness claim. In fact, neither did the prosecutor when they submitted their answering brief. In addition, when the defendant brought a collateral challenge by way of a 440-10 motion back to the trial court, again, no reference at all was made to the ineffectiveness claim. Let me interrupt you on that. I mean, I, looking at the 440 decision, see that the legal analysis started with attention to the ineffectiveness claim. And there were many different aspects of ineffectiveness that were raised, but it treats in several paragraphs the various arguments that were made, addresses and finds that counsel provided a competent performance, including appropriate objections, which is part of what the ineffectiveness assistance that has been raised focuses on, and discusses at great length the fingerprint expert aspect, pointing out that trial counsel had chosen not to call the fingerprint expert that he had consulted with as a matter of trial strategy, having informed the court that he had hired such an expert and declined to present it. So I don't see what's missing from the 440 decision. So maybe you could enlighten me. I think the ineffectiveness of trial counsel claims that were addressed by the appellate division in the collateral challenge referred to other omissions by trial counsel, not specifically to his failure to object to the criminalist's testimony regarding the two other examiners' conclusions. It refers to including appropriate objections. And it's a complete approach, I think, a comprehensive attempt to address the objections and concerns that have been raised about ineffective assistance. It doesn't call that out specifically, the failure to object to the technical experts. As Judge Kogan pointed out, it was half a page in 27 pages of Ms. Simonetti's testimony. So I don't really see how you can urge us that these arguments were overlooked. Well, I disagree with the Court, obviously. I think that it was overlooked. And the fact that the appellate division so specifically addressed the other aspects of the ineffective disclaim without even mentioning the fact that counsel had not objected to what really turned out to be a denial of the defendant's right of confrontation, I think is telling. Mr. Ongo, let me ask you about the merits. On the issue of whether or not there would have been a strategic reason not to object, whether it was ineffective not to object, I know Judge Kogan said there would have been no reason not to object in this situation. But when you look at the question and the answer, first of all, the question was, what did you do after you found the match? So there was no notice to the counsel that this was going to come out about the two examiners. And the answer to that question was one question about what did you do next, and then it comes out. So then the defense lawyer has a decision to make at that point, I guess. It's come out. Maybe you could object after it comes out. But why wouldn't it be a strategic decision? It was a brief reference, the witness's testimony, and the counsel crossed the witness on inconsistencies or problems that may have existed in the testimony. Why isn't that a strategic decision? I'm not going to object and highlight this to the jury. And also, the prosecutor could turn around and call those two experts, which could be worse. Yeah. And I know that argument has been made, but here's the thing. What's wrong with that argument, though? Well, first of all, once the testimony comes out, it's improper.  Trial counsel should move to have it. Well, first of all, Williams, the Supreme Court hadn't decided Williams yet. This trial is in 2010. So it wouldn't even be clear to counsel at that time that if he had objected, that he necessarily would have prevailed, right? There was no case law that said — Well — Actually, we said in James in 2013 that the Confrontation Clause case law is so muddled that someone wouldn't know if one expert refers to work that other experts did, whether or not that would be a problem or not. But I think, to me, it's clear that the testimony of the testifying criminalist as to the conclusions mirroring her conclusions that this was the defendant's fingerprints, clearly that's offered for the truth. Whenever the case was tried, whether it was right after Crawford or 10 years later, you're objecting to that because you're laying before the jury the conclusions of two uncalled witnesses. Okay. So let's go back to my original question. Why wouldn't you maybe say to yourself, I don't want to object because it's going to highlight potentially that brief reference to the jury, and the prosecutor may turn around and call the two other witnesses, which will make my client's situation much worse. But the prosecutor could always do that. There's no way to prevent that. So I don't see the harm in asking the judge, please strike that testimony and issue a limiting instruction or a curative to the jury. Don't regard that. And jurors are presumed to follow those types of instructions. Wouldn't that highlight it, though? Wouldn't that highlight a very brief reference that was never referred to again in the closings or any other part of the trial? Again, it may have been a brief reference, but the jury heard it. So regardless of whether it was later exploited by the prosecutor during submission or it only consisted of a quarter of a page of testimony, the jury hears it and they take that into account without any other evidence. All right. This is a circumstantial evidence. Let me ask you that. That's the next question I had about prejudice. If that reference hadn't been made, what evidence is there that the jury would not have credited the one fingerprint expert who testified? As you probably know, hundreds and hundreds of cases, defendants are convicted based upon the testimony of one fingerprint expert. I think it's very rare that a prosecutor would ever call more than one fingerprint expert. So what was there in the testimony of that witness that would have created any doubt about the accuracy of that comparison? Well, without that testimony, trial counsel could make the argument to the jury, look, the people have a single piece of evidence presented by one lone witness, no other evidence connecting the defendant. But isn't it true that defendants get convicted routinely based upon a fingerprint expert, but one expert who compares the fingerprints, that the government doesn't call two or three verifiers on a fingerprint? I understand that, but that's up to the prosecution, how many witnesses they want to make a point with. But with only Simonetti, the witness who testified for the prosecution, with only her testimony, I think the defense has a much stronger argument before the jury, look, this is a one-witness case, and it's circumstantial at that. And that's all we have in this case. With the two other examiners' conclusions thrown into the trial, that gave the jury something more than they should have had in this case. Thank you very much. You have three minutes of rebuttal. We'll hear from the State. The government. Good morning, Your Honors. Camille Gillespie for Respondent Apelli. Just to clarify the testimony of Simonetti here, referring to other examiners, initially her testimony is a description of essentially what the lab protocol is without referring to any conclusions on the part of other examiners. And so then later on, approximately nine pages later in testimony, when she's asked what did you do after you had a match, she does refer to other examiners signing confirmation slips is what she refers to. But there's no explanation of what confirmation slips are. There's no document entered into evidence with respect to other examiners. So you have the witness herself who did perform the analysis and the match, testifying about the match and the work that she did and the protocol that she followed. And only — it's really only very implicit or oblique reference to any, quote, conclusion on the part of the other examiners. It would be if it was just that question and answer. But when she does describe the protocol, she certainly explains that these confirmations involve a separate independent analysis by other experts. If you combine her overall explanation of the protocol with that reference, I don't think that it would be a stretch to say that the jury understood that this was an independent examination by two other examiners, right? Except it was still very oblique. And neither the prosecution nor the defense discussed this or emphasized that in any way in their closing arguments to the jury. And her own match was — her own testimony was really the focus. And defense counsel still could argue and did argue that there was a lack of evidence and so on other than her testimony. So it wasn't as though there was prejudice from this fleeting, unobjected-to testimony concerning other examiners. So that's, I suppose, the crux of the matter. But just to return back to the decision by the district court, the court in this case found that there was no prejudice from an error of counsel. Respondent's position is there was no error. This was reasonable. And I'd also like to emphasize that this is the — we know from the 440 record that defense counsel in this case had retained his own defense fingerprint expert and knew that from his own expert that his own expert, if called to testify, would corroborate. You're inferring that, right? That was part of the record. The — I know that the record — I mean, the 440 court refers to the retention and the announcement that he was going to present as a witness his own expert testimony, his own expert, and then didn't do that. Didn't do that because it would have corroborated. This was in the papers, the — So it was clear that the other expert also would have corroborated the finding. Yes. Yes, Your Honor. And so knowing this, defense counsel clearly would not have wanted to call attention to other examiners or invited in any way the prosecutor to call these other witnesses in response to an objection on Crawford grounds. And again, Crawford was not clearly — although the Crawford decision was available to counsel and also Melendez-Diaz, in those cases — in Melendez-Diaz, for example, there was testimony by — there was no testimony by the actual analyst. Here you have — and it was just lab reports that were affidavit — effectively affidavits that were put into evidence, whereas in this case, you had the actual — the witness who performed the analysis testifying, and no lab report from another analyst came into evidence. So defense counsel could reasonably regard this as, well, it wasn't clear or it wasn't necessary, it would — it would have a significant downside. So therefore, Respondent's position is that counsel didn't err, his conduct was reasonable in not objecting, and — and that — So what's your position about whether the — whether any State court addressed this particular argument on the merits? Well, the appellate — the Respondent's position is that the — the appellate division addressed this claim, did not specifically expressly address this claim, but it rejected the claim of ineffective assistance of counsel relating to the Confrontation Clause claim on direct appeal. And I say that — But they found that it was not preserved, and so they weren't addressing it on the merits. But a claim of ineffective assistance of counsel does not require preservation. That's why it's important to note when the appellate division said the Confrontation Clause claim was unpreserved, it wasn't referring to the ineffective assistance of counsel portion of that, just as it did expressly address the — the lack of preservation and its own decision to not — not review it in the interest of justice. That argument by Defendant was on the same page as Defendant's argument referring to ineffective assistance of counsel for failure to object to the confrontation issue. So — so it's clear that the appellate division wasn't overlooking it. It was rejecting it. And even though it didn't — the claim was very insubstantial. Although it did refer to Strickland and other cases, it was completely unelaborated. It was so insubstantial. And — and the Supreme Court has said State courts aren't required to address every insubstantial contention of a defendant. So under these circumstances, again, I would — I would say in addition to that, even if you were not convinced that the appellate division had rejected it on the merits, in — in the direct appeal, on the — in the 440 appeal, the — the appellate division said, contrary to the defendant's contention, the Supreme Court could determine from the party submissions that the defendant was not deprived of the effective assistance of counsel. So under State law, a claim that has been raised on direct appeal, a claim, I should say — Breyer. The lower court in the 440 did not address the merits of this claim. It said it was unpreserved. So, right? Blatt. I'm sorry? Breyer. The lower court in the 440 motion on the ineffective assistance of counsel, again, said it was unpreserved and did not address the merits, right, of this particular claim. It said it was — as it was — as it had been referenced in the direct appeal, it's unpreserved. It didn't say we rejected on the merits, right? Blatt. Well, what the — what the — what happens on direct — on the — on the appeal from 440, both sides address this issue at length, and the appellate division makes this decision. So — and under State law, the appellate division — under — under State law, the of ineffective assistance of counsel that includes a variety of things, including contentions that have already been raised on appeal, because this is the kind of claim where you combine the grounds and the — Breyer. In the lower court 440 opinion — Blatt. Yes. Breyer. — explicitly addressed this first claim for ineffectiveness for failure to investigate and object generally. But then with the second claim, which was on this particular issue, failure to object to the reference to the other examiners violating a confrontation clause, and in the 440 decision by the lower court on that particular claim, said it's unpreserved. Blatt. I — I don't — I don't believe that the — the — that the ineffective — I don't believe that the Court said that the claim of ineffective assistance of counsel is unpreserved. Now, it may be procedurally barred. Breyer. Well, it didn't address the merits, is my point. It did not address the merits of that claim in the 440 decision, right? Blatt. Correct. Because what you're saying is that the Court, in that instance, is saying there's a procedural bar that would — now, the appellate division does not require to make that same — take that same view. And so that's why I'm saying it's really up to the appellate division. And the appellate division's decision in this case was — was — was very clearly a rejection of the ineffective — all of the aspects of the ineffective assistance of counsel claim. And you have that — you can see that from the briefs that both in the appellate division on the 440 proceedings, which both addressed at length the claim concerning ineffective assistance of counsel. Breyer. In the appellate division's decision on the 440, they specifically have a paragraph about this claim and, again, refer to the fact that there's a procedural issue. It says, Therefore, the defendant is barred from raising this contention anew dressed in different procedural garments. So it essentially affirms the lower court's decision on the 440 on procedural grounds and does not address the merits of that particular claim. Well, that's — I'm looking at the decision right here. Yes. I just read to you from the decision. Yes. That paragraph deals specifically with this exact claim and said it continues to be procedurally barred, right? Well, no, because it's only talking about the ineffective — it's talking about the confrontation clause claim, which is unpreserved. The appellate division did not say that the ineffectiveness claim was unpreserved. That's contrary to State law, and they would not have said that. And that's part of how you can parse this out, because they're talking about the confrontation clause claim, and then the contention that his counsel was ineffective is treated with the other contentions that were non-record contentions. That's under People v. Maxwell, which is the case that's cited in our brief under State law. So under these circumstances where the appellate division, either on direct appeal or in the 440 motion or both, has rejected the defendant's claim of ineffective assistance of counsel on the merits, Epidephrin should — Thank you. Thank you very much. Mr. Unger, you have three minutes of rebuttal. And I have basically three points that I want to use in my rebuttal time. First, the point about the lab protocol. It really wasn't relevant to the testifying examiner's conclusions. What she did with the results of her test, other examiners looking at them and doing their own, I don't see what relevance that had. And what it resulted in is essentially two additional conclusions by two uncalled witnesses who are, I guess, themselves experts and viewed as such, presented before the jury as confirmation of the testifying examiner's conclusion. Now, the point was made about trial counsel having retained his own expert to examine the latent fingerprints and realizing, oh, this is confirmation of the prosecution's So that's interesting because trial counsel knew that there was a possibility of corroborating the expert called by the prosecution. So he well knew that the other examiners who weren't called by the prosecution, they were going to be damaging, just as his own expert would damage the defendant's case. So he would have known and should have objected to this testimony coming out for that same reason. Now, the other point was with Melendez-Diaz, the prosecutor made the argument that, well, no expert witnesses at all were called in that trial, and that was the problem. Well, here it's true. We did have one expert witness who was called, Ms. Simonetti, but the two who weren't called makes it the same problem and situation that the Court was dealing with in Melendez-Diaz. We're not concerned about the witness who did call, was called by the prosecution. We're concerned about the two uncalled witnesses. They were never subjected to cross-examination. They were not found to be unavailable. I submit to this Court that was a clear Crawford violation and a Sixth Amendment confrontation violation. Thank you. Thank you very much. Thank you for your arguments. We'll take the matter.